OPINION OF THE COURT
Shirley Werner Kornreich, J.
This action arises from an alleged misappropriation of trade secrets. Plaintiffs offer sophisticated computer software to clients who participate in the global financial market. Defendant Philip Jacob worked for plaintiffs. Defendant Axioma, Inc., is Jacob’s new employer.
As a result of the allegations, discovery has centered on computer source codes and their components and sequencing. Essential to discovery is what portion of plaintiffs’ source codes are trade secrets and, of course, what portion of those trade secrets were or were not misappropriated by either or both defendants. Per the court’s March 29, 2012 order, the parties submitted simultaneous six-page letters with exhibits, on the issue of “whether the plaintiff has to affirmatively identify its trade secrets at this juncture or is it sufficient to identify the components [of the source codes] not claimed to be trade secrets.”[1] The court had previously made a ruling on the issue, early in the discovery process. The issue arose at a discovery conference and was not briefed. That ruling is the subject of the letters.
I. Plaintiffs’ Position
Plaintiffs argue that, on November 21, 2011, the court ruled that the plaintiffs could identify what parts of their source codes underlying three technologies — Risk Server, PnP and Structure Tool — are claimed to be trade secrets by identifying those aspects not claimed to be trade secrets. The court ordered plaintiffs to supplement their responses to defendants’ interrogatories by providing a list of source code components: (i) that are covered by third-party licenses; (ii) that are in the public domain; or (iii) over which plaintiffs do not claim trade secret status. (See plaintiffs’ Apr. 9, 2012 letter, exhibit B.)
Plaintiffs maintain that this is a practical and cost effective solution to meet their burden of trade secret identification, is legally sufficient, and reflects the court’s intent to move the case forward. Plaintiffs also assert that defendants’ request to modify the November 21, 2011 order is untimely and would put *213 discovery back four months. Plaintiffs further contend that their identification of the entirety of the source code in their interrogatory responses as a trade secret is adequate because the source code underlying their products constitutes a compilation and sequencing of component parts. In support of this position, plaintiffs rely on a number of cases — almost none of which squarely address the issue.[2] (See plaintiffs’ Apr. 9, 2012 letter, at 5.)
For example, plaintiffs’ reliance on Member Servs., Inc. v Security Mut. Life Ins. Co. of N.Y. (2010 WL 3907489, *9, 2012 US Dist LEXIS 103776, *27 [ND NY 2011]), a case where the plaintiffs asserted that their trade secret was the entire combination, is misplaced. That is because here, plaintiffs’ not only claim that the “entirety” of the source code is a trade secret, but admit parts of the codes are in the public domain and parts are licensed. Plaintiffs claim that (i) component parts are trade secrets; (ii) “certain details of the specific implementation . . . constitute trade secrets”; and (iii) the knowledge obtained by defendant Philip Jacob during his employment with plaintiffs, including the specific pitfalls or development strategies to avoid, is inevitably benefitting Axioma and allowing it to develop its product more quickly and efficiently.[3] (See defendants’ Apr. 9, 2012 letter, at 3.)
II. Defendants’ Position
Defendants argue, and the court agrees, that it did not intend its November 21, 2011 ruling to be the final word on the subject. Upon consideration of the case law cited by plaintiffs,[4] the court is persuaded that the law requires that a trade secret plaintiff identify trade secrets with reasonable particularity early in the case.[5] (See Xerox Corp. v International Bus. Machs. Corp., 64 FRD 367, 371 [SD NY 1974] [“(t)he burden is upon the plaintiff to specify (the alleged trade secrets), not upon the defendant to *214 guess at what they are . . . Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether (defendant) can undertake a meaningful discovery program”].) Only by distinguishing between the general knowledge in their field and their trade secrets will the court be capable of setting the parameters of discovery and will defendants be able to prepare their defense.
Here, plaintiffs’ misappropriation claim alleges a number of different trade secrets beyond its compilation theory. Plaintiffs, who have brought this action, bear the burden of proving their allegations. Merely providing defendants with plaintiffs’ "reference library” to establish what portions of their source code are in the public domain shifts the burden to defendants to clarify plaintiffs’ claim. (See Sit-Up Ltd. v IAC/InterActiveCorp., 2008 WL 463884, *6-7, 2008 US Dist LEXIS 12017, *15-19 [SD NY 2008] [ordering plaintiff to identify its trade secrets within 40 days and stating that plaintiff “ha[s] to be able to identify with specificity what information [it] consider^] to have been a trade secret ... If the plaintiff can’t do that now, it can’t proceed on that theory, because the defendants have a right during discovery to test whatever the plaintiffs theory is . . . Plaintiff is the only one who can know what it believes its trade secrets are. . . . And it is unfair to . . . the defendants to conduct discovery without knowing what the assertions are”]; see also 3 Milgrana on Trade Secrets § 14.02 [2011] [“it is essentially necessary for a plaintiff to identify its trade secrets before the defendant proceeds with disclosure of its confidential information”].) Additionally, the disclosure does not enlighten either defendants or the court as to what sequencing of publicly known components or licensed components are trade secrets. Hence, it is insufficient.
Moreover, it would be unfair to allow plaintiffs to discover Axioma’s trade secrets prior to revealing their own. Should defendants remain in the dark as to the explicit portions of the source codes that plaintiffs deem to be trade secrets misappropriated by defendants, plaintiffs, once privy to Axioma’s source codes, could tailor their theory of misappropriation to Axioma’s work.
Indeed, Axioma’s work could be misappropriated. For this reason, plaintiffs are precluded from seeking further discovery from defendants until they identify, with reasonable particularity, which of the component parts or sequencing of their source *215 code are not (1) publicly available information, (2) commonly-used algorithms, or (3) third-party licensing. Plaintiffs shall further supplement its “paths not taken” response to defendants’ interrogatory requests.
The court is not insensitive to the costs of its order. However, discovery in this age of electronically stored information, and thus litigation, has become an exceedingly expensive venture. This is even more the case, when the subject of the action is computer software and programming.
Accordingly, it is ordered that plaintiffs are to identify to defendants, on or before June 8, 2012, the trade secret components of their source code.

. In reaching its decision, the court did not consider the attorney affidavit or the expert affidavit submitted by defendants as exhibits to their letter.

. For example, in In re InSITE Servs. Corp., LLC (287 BR 79, 89-90 [SD NY 2002]), the court, in assessing the sufficiency of the claim at the motion to dismiss stage, found that, giving the plaintiff the benefit of all favorable inferences, the identification in the complaint sufficed for the claim to survive. This is clearly not the posture of, or the standard to be followed in, discovery.

. Jacob is not bound by a noncompete agreement.

. See plaintiffs’ letter, at 4 n 5 (gathering cases, treatises and a Feb. 16, 2010 New York Law Journal article).

. At least one state, California, has already adopted legislation codifying this requirement. (See Cal Civ Proc Code § 2019.210 [in action alleging misappropriation of trade secret, before commencing discovery, party alleging misappropriation must identify trade secret with reasonable particularity].)